In re ALLEGHENY HEALTH, EDU-
CATION AND RESEARCH FOUN-
DATION, et al., Debtors.

Acordia of West Virginia,
Inc., Plaintiff,

v.

William J. Scharffenberger as Chapter 11 Trustee of Allegheny Health, Education and Research Foundation and formerly affiliated hospitals Allegheny University Hospital–Centennial, Hahnemann University Hospital, Medical College of Pennsylvania Hospital, City Avenue Hospital, Allegheny University Hospital–Elkins Park, St. Christopher's Hospital; Travelers Insurance Company; Tenet Health System Philadelphia, Inc.; and West Penn Allegheny Health System, Inc., Defendants/Claimants.

Bankruptcy No. 98–25773–MBM.
Adversary No. 02–2129–MBM.

United States Bankruptcy Court,
W.D. Pennsylvania.

April 8, 2005.

Philip E. Beard, Stonecipher, Cunningham, Beard & Schmidt, Pittsburgh, PA, Jeffrey A. Brauer, Julie L. Kaplan, Mark E. Staib, Hahn, Loeser & Parks LLP, Lee D. Powar, Cleveland, OH, for debtors.

### MEMORANDUM AND ORDER
### OF COURT

M. BRUCE MCCULLOUGH, Chief Judge.

AND NOW, this 8th day of April, 2005, Acordia of West Virginia, Inc. (hereafter "Acordia") having filed an interpleader complaint so as to commence the instant adversary proceeding, wherein two of the above-named defendants/claimants, namely the Chapter 11 Trustee (hereafter "the

Trustee") for the instant debtors (hereafter collectively referred to as "AHERF") and West Penn Allegheny Health System, Inc. (hereafter "West Penn"), stake a claim to all or a part of a fund presently held by Acordia in the amount of $817,149.04 (hereafter "the Disputed Funds");

and the Court having already ruled, by virtue of its Memorandum Opinion and Order of Court dated July 9, 2004 (hereafter the "July 9, 2004 Opinion"), that (a) West Penn, by virtue of subrogation, is entitled to receive at least $125,030.70 of the Disputed Funds from Acordia, and (b) the Trustee is entitled to receive at least $548,507.62 of the Disputed Funds from Acordia, see In re Allegheny Health, Educ. and Research Found., 312 B.R. 58, 77 & 80 (Bankr.W.D.Pa.2004);

but the Court also having then deferred ruling as to who shall receive the $143,610.72 remainder of the Disputed Funds—such remainder is comprised of a $142,248.67 excess insurance carrier refund (hereafter the "Insurance Refund") and a residual balance (hereafter the "Residual Balance") of $1,362.05—until the parties undertook additional discovery that would assist the Court in resolving such issue, see Id. at 77–78 & 80;

and the parties now having (a) completed such discovery, and (b) also entered into a Stipulated Record Regarding Proceeds of Republic Western Insurance Company Excess Policy for Policy Year 1990, that is a stipulation as to "the sum and substance of testimony that would be offered by witnesses in the event of an actual trial with respect to" the present entitlement as between the Trustee and West Penn to the Insurance Refund (hereafter "the Insurance Stipulated Record"), see Insurance Stip. R. at p. 2;

and after having considered the parties' briefs regarding entitlement to the afore-said $143,610.72 remainder of the Disputed Funds;

and given the representation by both parties that the aforesaid entitlement issue may be resolved without oral argument;

and in light of the July 9, 2004 Opinion, from which the Court draws heavily, when rendering the instant decision, with respect to, inter alia, the nomenclature used therein (i.e., the reader shall refer to such opinion for the meaning of various terms used herein),

it is hereby **ORDERED, ADJUDGED, AND DECREED** that:

(a) **West Penn,** by virtue of subrogation, is entitled to receive **the entirety of the $142,248.67 Insurance Refund** from Acordia; and

(b) **the Trustee** is entitled to receive **the entirety of the $1,362.05 Residual Balance** from Acordia.

The rationale for such decision by the Court is set forth in some detail below.

## I.

■ The Court has previously ruled that (a) "if either Travelers or West Penn made the prior payment of benefits from which the $142,248.67 excess insurance refund [(i.e., Insurance Refund)] arises, then West Penn shall be entitled to such refund via subrogation," Allegheny Health, 312 B.R. at 77–78, and (b) if AHERF, on the other hand, paid such underlying claim, then such subrogation is inappropriate and the Trustee is entitled to such refund, see Id. at 78. The Court so ruled because the Court also ruled, in turn, that (a) West Penn is entitled to the Insurance Refund—or, for that matter, any part of the Disputed Funds—only if, and to the extent that, it is equitably subrogated to the rights of AHERF (i.e., West Penn's principal) which arise from or are closely related to Travelers' Indemnification Claim, see Id. at 74–76, and (b) "the portion of the Disputed

Funds that arises from or that is closely related to Travelers' Indemnification Claim is that portion that pertains—i.e., is traceable—to . . . claims that were paid by either Travelers or West Penn," *Id.* at 76.

When ruling as the Court did, the Court presumed, as was the case with respect to the underlying claims from which arises the $673,538.32 portion of the Disputed Funds for which the Court has already determined entitlement (i.e., $125,030.70 to West Penn and $548,507.62 to the Trustee), that either Travelers and/or West Penn, on the one hand, or AHERF, on the other hand, paid the entirety of the underlying claim from which the Insurance Refund arises. As it turns out, $442,248.67 was paid out on the underlying claim from which the Insurance Refund arises (hereafter "the Underlying Claim"), *see* Insurance Stip. R. ¶¶ 14–15, but such amount was satisfied, in part, both by AHERF and by Travelers, *see Id.* at ¶ 15. In particular, AHERF paid $100,973.15 of the Underlying Claim, while Travelers paid $341,275.52 of the Underlying Claim. *See Id.* In light of the foregoing, is West Penn entitled to be subrogated to the entirety of the Insurance Refund or, instead, no part of such refund at all, or, as the Trustee alternatively argues, are the parties each entitled to a pro rata portion of such refund—i.e., $100,973.15/$442,248.67 × $142,248.67, or $32,477.87 to the Trustee, and $341,275.52/$442,248.67 × $142,248.67, or $109,770.80 to West Penn?

The Court holds that West Penn is entitled to be subrogated to the entirety of the Insurance Refund because the Court concludes that the entirety of the Insurance Refund is closely related to, if it does not also arise from, the $341,275.52 portion of the Underlying Claim that was paid by Travelers, the close relationship between the entirety of the Insurance Refund and the $100,973.15 portion of the Underlying

Claim that was paid by AHERF notwithstanding. When undertaking its subrogation analysis, the Court disregards the close relationship between the Insurance Refund and the $100,973.15 portion of the Underlying Claim that was paid by AHERF because it is irrelevant to such analysis that AHERF, absent subrogation in favor of West Penn, has an entitlement to such refund—indeed, no one doubts that AHERF and, thus, the Trustee would have the right to such refund were subrogation in favor of West Penn not called for. What is relevant to the Court's subrogation analysis is only whether the Insurance Refund is closely related to the $341,275.52 portion of the Underlying Claim that was paid by Travelers—if there is such a relationship, then West Penn may look to AHERF's right to such refund for reimbursement of that which was paid by Travelers on the Underlying Claim, or $341,275.52. Because the Insurance Refund totals $142,248.67, which amount is less than $341,275.52, West Penn is entitled to the entirety of such refund. *See In re Diversified Transportation Resources, Inc.,* 88 B.R. 635, 647–649 (Bankr.D.N.J.1988) (Utica, the subrogee, was entitled to the entirety of the $62,037.02 Group 3 recovery even though it paid only, but actually because it paid, $125,513 worth of the $300,109 underlying claims from which such recovery arose). As an aside, if the amount that Travelers had paid on the Underlying Claim was less than the amount of the Insurance Refund, then West Penn would not be entitled via subrogation to the entirety of such refund; instead, in that event, West Penn could only receive via subrogation that portion of such refund necessary to reimburse for what Travelers had paid out on the Underlying Claim, with the excess then going to the Trustee. *See Id.* (Utica, the subrogee, was entitled to only $167,889 of the $418,799.15 Group 2 recovery because it

only paid $167,889 worth of the $894,290 underlying claims from which such recovery arose).

As for the arguments raised by the Trustee in his brief vis-a-vis the Insurance Refund, the Court rejects the same summarily, in large part because (a) the Court has already rejected such arguments in the July 9, 2004 Opinion, and (b) such arguments, in the Court's view, have no merit when applied to the Insurance Refund than when applied to the remainder of the Disputed Funds.

Because West Penn is entitled to be subrogated to the entirety of the Insurance Refund, Acordia shall pay such refund in full, that is a portion of the Disputed Funds equal to such refund, to West Penn.

## II.

■ With respect to the $1,362.05 Residual Balance, the Court has previously held

> that, since West Penn bears the burden of proof on all issues regarding subrogation, if the Court, after the aforesaid additional discovery, ultimately cannot apportion the aforesaid $1,362.05 balance between underlying claims that were paid by AHERF, on the one hand, and underlying claims that were paid by Travelers or West Penn, on the other hand, then the Court shall be constrained to rule that such balance is entirely attributable to claims that were paid by AHERF, thereby defeating any recovery via equitable subrogation for West Penn from such balance.

*Allegheny Health,* 312 B.R. at 77 n. 9. The parties have now completed such discovery and have turned up nothing relevant to the issue of who paid the underlying claims from which the Residual Balance arises. West Penn appears to concede as much because, in its brief, West Penn does not even address, let alone ask that it be awarded, the Residual Balance. Therefore, the Court (a) must rule that the Residual Balance is entirely attributable to claims that were paid by AHERF, (b) must rule that West Penn thus is not entitled to any of the Residual Balance via equitable subrogation or otherwise, and (c) directs Acordia to pay the entirety of the Residual Balance, that is a portion of the Disputed Funds equal to such balance, to the Trustee.

## III.

**IN SUMMARY,** (a) **West Penn,** by virtue of subrogation, is entitled to receive **the entirety of the $142,248.67 Insurance Refund** from Acordia; and (b) **the Trustee** is entitled to receive **the entirety of the $1,362.05 Residual Balance** from Acordia.[1]

---

1. The Court rules that its directive to Acordia to pay the amounts set forth above is without prejudice to Acordia's pending motion in the instant adversary proceeding for the recovery first from such amounts of its attorneys' fees and expenses that were incurred during the course of the instant interpleader action. Therefore, Acordia need not disburse any of the amounts as set forth above until its pending motion for fees and expenses is resolved by the Court.